OPINION OF THE COURT
Thomas P. Farley, J.
Motion by claimant in a condemnation proceeding to compel condemnor to make an offer and an advance payment pursuant to sections 303 and 304 of the Eminent Domain Procedure Law.
Claimant’s assertion that it was the owner of premises known as 225 West Park Avenue in the City of Long Beach on the date of vesting of title is disputed. Claimant’s title is based on a tax deed, while the condemnor is the grantee of the United States Government which acquired its title through a mortgage foreclosure sale. Each party claims superiority of title, and a review of the sequence of events is necessary for a resolution of the problem.
In January of 1972, the former owner of the property obtained from the National Bank of North America a mortgage that was insured by the Federal Housing Au *1038 thority (FHA). The mortgagor thereafter defaulted in the payment of the mortgage, and the United States Government (HUD) took an assignment after paying off the bank. The assignment was recorded on June 28, 1974.
On July 1, 1974, the second half of the county taxes became a lien against the premises. Although counsel for claimant states that shortly (after February, 1974) the owner went into arrears in the payment of real estate taxes, there is no factual proof that any taxes were actually in arrears at the time of the assignment of the mortgage. In any event, no lien attached prior to the assignment.
On February 13, 1975, the Treasurer of Nassau County sold the tax lien to one Pauline E. Thurlow, as nominee of Joseph Harris, and on November 23,1977, delivered to her a tax deed to the premises.
Prior to the delivery of the tax deed and on March 10, 1976, the Government commenced a foreclosure action without notice or service of process on the tax lien purchaser. A referee’s deed was obtained by the Government on September 28,1977. During the pendency of this action, the Government had actual notice of the tax lien, and was advised by the holder of the tax lien certificate a deed would be executed to her if the taxes remained unpaid.
After receiving the tax deed from the county on November 23, 1977, the purchaser executed a quit claim deed to the claimant in this proceeding. On August 8, 1979, the petitioner condemnor received a bargain and sale deed from the Federal Government.
There is no doubt that the original mortgage was insured by the Federal Housing Authority, and that there was no default in the payment of taxes when that mortgage was executed in 1973. There is also no question that the assignment of that mortgage to the FHA preceded by four days the date (July 1,1974) on which the unpaid taxes became a lien on the property. “No basis in law exists for treating mortgage interests of federal instrumentalities differently from other property of the United States.” (Rust v Johnson, 597 F2d 174, 177, cert den 444 US 964.) The court in the cited case additionally stated (p 178): “And we hold that an *1039 exercise of state power over a mortgage interest held by FNMA[1] constitutes an exercise of state power over property of the United States.”
In a similar vein, it has been stated that local governments cannot take any action to collect unpaid taxes assessed against property which would have the effect of reducing or destroying the value of a Federally held purchase money mortgage lien (United States v General Douglas MacArthur Senior Vil., 470 F2d 675, 680, cert den sub nom. County of Nassau v United States, 412 US 922). Accordingly, the first in time is the first in right rule governs the priority of liens in this case, and since the guarantee of the mortgage indebtedness, ánd the actual assignment of the mortgage to governmental instrumentalities occurred before the lien of local taxes became fixed, the petitioner whose title derived from the Government must prevail.
The position of claimant that the tax deed extinguished the Government’s interest in the property acquired through a referee’s deed is not tenable. Local laws cannot extinguish the rights of the Federal Government in property under the supremacy clause of the Constitution. Nor does the court perceive how the situations can be changed by the circumstance that the Government had notice of the outstanding taxes and of the sale of the tax lien certificate when it commenced its foreclosure action. If the Goverm ment lien is paramount, the simple failure to give notice to the tax lien purchaser cannot cloak that person with any greater rights than it originally possessed, and any attempt to do so on procedural grounds must fail as an unconstitutional attempt to divest the Government of its superior rights.
Claimant additionally argues that the lien of the mortgage must be deemed discharged because of the mortgagee’s failure to exercise its right of redemption in accordance with section 1024 of the Real Property Tax Law. This section confers upon a mortgagee a right of redemption at any time within three years after the sale or within six months after the tax lien purchaser has filed with the *1040 county treasurer evidence of the service of a notice on the mortgagee demanding the payment of the amount necessary to redeem the land. Although there is no proof in the original motion papers that the notice was properly served and filed, the supplemental papers state, without challenge, that the requirements of section 1024 were met. Under such circumstances, the time to redeem under section 1024 expired on or about six months after February 13,1977 or before the time of delivery of the referee’s deed in foreclosure to the Government.[2] While claimant argues the mortgage is thereby deemed discharged, the condemnor asserts the Government’s lien interest cannot be so divested, and at best, claimant is entitled to no more than the amount of its tax lien plus interest.
The cavalier position assumed by the Government in this litigation is understandably irksome to the claimant. The tax lienor was not served with process in the foreclosure proceeding and its notice to redeem was ignored.
A conveyance by the county treasurer of real property sold for the nonpayment of taxes vests in the grantee an absolute fee estate subject to all claims of the county or State for taxes, liens, or other encumbrances, and the right of redemption as provided in sections 1022 and 1024 of the Real Property Tax Law (Real Property Tax Law, § 1020, subd l).[3] By its plain language, this section gives preference to State and county liens by permitting their survival (Segar v Youngs, 45 NY2d 568, 570). It is silent on the survival of claims of the United States Government. While the State Legislature may prefer State and County taxes and liens over village or other municipality taxes and liens, the supremacy clause of the Constitution does not permit State governments to impair Federally owned property rights. Accordingly, section 1024 may not be construed to affect the lien interest of Federally owned mortgages which, as here, were acquired prior to the attachment of a lien for unpaid taxes.
The motion is denied.

. Federal National Mortgage Association

. This point has no practical significance since the three-year period in which to redeem also expired on November 23, 1980.

. This section later amended by chapters 700 and 701 of the Laws of 1979 to include claims of town, city, and villages to overcome holding in Segar v Youngs (45 NY2d 568).