Milton BERLIN, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. CV 81–2387.

United States District Court,
E. D. New York.

March 31, 1982.

Stim & Warmuth, P. C., Huntington, N. Y., for plaintiff.

Edward R. Korman, U. S. Atty., by Michael Cavanagh, Asst. U. S. Atty., Brooklyn, N. Y., for defendant.

MEMORANDUM AND ORDER

GEORGE C. PRATT, District Judge:

By motion submitted for decision March 3, 1982, the government moves to dismiss

the complaint, which seeks to enjoin it from enforcing a tax lien. The government contends that even if all of the facts are construed in plaintiff's favor, the tax lien at issue was not and could not have been extinguished in the manner relied upon by plaintiff.

## FACTS

For purposes of the instant motion, the court accepts all of the allegations in plaintiff's complaint as true. On December 2, 1975, IRS filed a notice of federal tax lien in the office of the Clerk of Suffolk County in the amount of $5,688.68 against the interest of Bernard Early in a home he owned with Ann Early located in East Northport, New York. On June 30, 1976, Guardian Loan Company, Inc. obtained a judgment against Bernard and Ann Early in the amount of $1,268.93, which was docketed in the office of the Clerk of Suffolk County on July 14, 1976. Thus, Guardian's judgment lien was second in time to IRS' senior federal tax lien.

In April, 1977, Guardian delivered to the sheriff of Suffolk County an execution for the purpose of selling the East Northport property to satisfy the judgment. All of the notice of sale requirements imposed by law were complied with.

After several adjournments, the sheriff's execution sale took place on August 1, 1977. Plaintiff, the highest bidder, received a deed from the sheriff on August 3, 1977 which was recorded in the office of the Clerk of Suffolk County on August 29, 1977. In 1980, plaintiff conveyed title to his nominee corporation, Grid Realty Corp., which, in turn, conveyed title on September 12, 1980 to Anathasia Spencer, who is now the owner of record.

At the closing of title between Grid Realty Corp. and Spencer, on September 12, 1980, Spencer's title insurance company demanded that plaintiff deposit $6,000 as security against the Early federal tax lien. Although plaintiff disputed the validity of the federal tax lien, he deposited the $6,000 security.

On November 24, 1980, IRS served a notice of levy upon the title company's agent, seeking the unpaid balance of the Early tax assessment in the amount of $1,844.26. Plaintiff then commenced this action seeking to enjoin IRS from enforcing the levy. Jurisdiction is provided by 26 U.S.C. § 7426.

## VALIDITY OF FEDERAL TAX LIEN

■ The issue before the court is whether the sheriff's execution sale, pursuant to a junior judgment lien, extinguished the senior tax lien. Plaintiff argues that it did. The government contends that even if plaintiff complied with all federal and state notice requirements, the execution sale could not and did not extinguish the senior IRS lien. The government relies upon both federal regulation and state law in support of its contention.

■ The parties agree that discharge of a federal tax lien is governed by federal law, except to the extent that federal law makes state law controlling. The parties also agree that a sheriff's execution sale is a non-judicial sale within the meaning of 26 U.S.C. § 7425, and thus governed by 26 U.S.C. § 7425(b), entitled "Other Sales", which provides as follows:

(b) Notwithstanding [the provisions relating to judicial sales] a sale of property on which the United States has or claims a lien * * * pursuant to a nonjudicial sale under a statutory lien on such property—

(1) shall, except as otherwise provided, be made subject to and without disturbing such lien or title, if notice of such lien was filed or such title recorded in the place provided by law for such filing or recording more than 30 days before such sale and the United States is not given notice of such sale in the manner prescribed in subsection (c)(1); or

(2) shall have the same effect with respect to the discharge or divestment of such lien or such title of the United States, as may be provided with respect to such matters by the local law of the place where such property is situated, if—* * *

(A) notice of such lien or such title was not filed or recorded in the place provided by law for such filing more than 30 days before such sale,

(B) the law makes no provision for such filing, or

(C) notice of such sale is given in the manner prescribed in subsection (c)(1).

Since (b)(1) and (b)(2) are listed as alternatives, the court will discuss the applicability of each subsection.

The first subsection, (b)(1), provides that a federal lien is *not* extinguished if three prerequisites are met: (1) notice of the lien was filed, (2) in the place provided by law more than 30 days before the sale, and (3) the United States was *not* given proper notice of the sale. In this case, the first two conditions were met, but the third condition was not met, *i.e.*, the United States *was* given appropriate notice.

Plaintiff argues that since the statute provides *that* if notice was not given the lien is not extinguished, then it automatically follows that if notice was given (and the other two conditions are met) the lien was extinguished. The court does not agree with plaintiff that this negative implication must, of necessity, be read into (b)(1), especially in light of (b)(2).

Subsection (b)(2) provides that divestment of the federal lien is governed by local law if any of the three prerequisites for application of (b)(1) was not present. Since notice of the sale was given here, (b)(2) on its face appears to govern rather than (b)(1).

While 26 U.S.C. § 7425(b)(2) would seem to defer to local law in the situation where, as here, all of the filing and notice requirements have been fulfilled, the government points to an IRS regulation promulgated under the statute that limits the application of (b)(2) to junior tax liens only. The regulation provides in relevant part:

Under section 7425(b)–(2)(C), in any case in which notice of the sale is given * * * the sale shall have the same effect with respect to the discharge or divestment of the lien or title as may be provided by local law with respect to other *junior*

liens or other titles derived from the enforcement of junior liens. *A nonjudicial sale pursuant to a lien which is junior to a tax lien does not divest the tax lien, even though notice of the nonjudicial sale is given* to the appropriate district director. 26 CFR § 301.7425–2(a)(3) (emphasis added).

Plaintiff argues that the regulation exceeds the scope of the statute and is therefore invalid. Although plaintiff is correct that the statute on its face is not limited to junior tax liens, a mere comparison between the statute and the regulation does not end the inquiry into the validity of the regulation. Rather, the court must ascertain whether the regulation is a reasonable interpretation of congress' intent when they enacted the Federal Tax Lien Act of 1966, of which 26 U.S.C. § 7425 is one provision.

■ The secretary of the Treasury Department is expressly authorized to "prescribe all needful rules and regulations for the enforcement of [the IRS Code], including all rules and regulations as may be necessary by reason of any alteration of law in relation to Internal Revenue. 26 U.S.C. § 7805. While courts have traditionally given great weight to the IRS regulations in construing the code, the administrative agency cannot alter congress' intent in enacting the underlying statute. Nor can the agency substitute its judgment for that of congress. *Compare Bingler v. Johnson*, 394 U.S. 741, 750, 89 S.Ct. 1439, 1445, 22 L.Ed.2d 695 (1969) and *Commissioner of IRS v. South Texas Lumber Co.*, 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948) with *Commissioner of IRS v. Acker*, 361 U.S. 87, 92, 80 S.Ct. 144, 147, 4 L.Ed.2d 127 (1959) and *United States v. Calamaro*, 354 U.S. 351, 358, 77 S.Ct. 1138, 1143, 1 L.Ed.2d 1394 (1957). In determining whether 26 CFR § 301.7425–2(a) is a proper administrative interpretation, the court must look to both the language of 26 U.S.C. § 7425(b) and the available evidence of congress' intent in enacting the statute.

The available legislative history suggests that when it enacted § 7425 congress was

focusing upon junior, not senior federal tax liens. In its general discussion of the purpose behind § 7425, the Senate committee noted:

> Under present law, a junior Federal tax lien may be discharged on foreclosure of a senior security interest. Such foreclosure may occur in a plenary judicial action, or, under the law of some States, by nonjudicial foreclosure pursuant to a power of sale contained in the senior security interest. * * * Where State law so provides, a junior Federal tax lien may be extinguished without the United States either being made a party to the proceeding or having any actual notice. S.Rep.No.1708, 89th Cong.2d Sess. *reprinted in* [1966] U.S.Code Cong. & Ad. News 3722, 3748.

The committee report goes on to discuss subsections (a), (b), (c), and (d) of § 7425 but it does not refer specifically to senior or junior tax liens; instead it speaks merely in terms of tax liens in general. In view of the earlier comment, however, it is reasonable to conclude that congress aimed the legislation only toward junior federal tax liens. The general purpose of the legislation was to provide reasonable protection for junior federal tax liens by requiring notice to IRS before they could be cut off. Nothing in the legislative history or the statutory language itself suggests a desire by congress to create a new means of cutting off senior tax liens.

Moreover, the Federal Tax Lien Act of 1966 was enacted in the wake of *United States v. Brosnan*, 363 U.S. 237, 80 S.Ct. 1108, 4 L.Ed.2d 1192 (1960), where the Supreme Court held that it was "desirable to adopt as federal law state law governing divestiture of federal tax liens, except to the extent that Congress may have entered the field." 363 U.S. at 241, 80 S.Ct. at 1111. The Court noted that "Congress must have recognized the possibility that state procedures might affect federal liens", and in the absence of some indication to the contrary, there was no reason to conclude that "Congress intended to exclude the application of all state procedures", 363 U.S. at 250, 80 S.Ct. at 1116.

The effect of *Brosnan* was to permit divestiture of federal liens even where the United States had had no opportunity to intervene to protect its rights unless the state law procedure so provided, and in some instances state procedures allowed a federal lien to be divested even if no notice was given. Significantly, however, *Brosnan* concerned divestiture of a junior tax lien. Lower courts interpreting that case refused to extend its holding to permit state enforcement procedures to extinguish senior government tax liens. *E.g., United States v. Roessling*, 280 F.2d 933 (CA5 1960); *United States v. Bluhm*, 414 F.2d 1240 (CA7 1969); *U. S. v. Peterson*, 204 F.Supp. 683 (E.D.Pa.1962).

Viewing 26 U.S.C. § 7425 in light of both the meagre legislative history and the Supreme Court's decision in *Brosnan*, there is no reason to believe that congress intended to deal with anything other than the *Brosnan* type situation of junior federal tax liens. The treasury department's regulation limiting the effect of § 7425(b)(2) to situations involving only junior tax liens is a reasonable interpretation and specification of the statute's intent. The court, therefore, rejects plaintiff's challenge to the validity of 26 CFR § 301.7425–2(a)(3).

Even if the court were to conclude, however, that the regulation exceeded the scope of the statute and was thus invalid, the next step under the statute would be to apply the law of New York to the issue of whether the senior tax lien was extinguished. Citing CPLR §§ 5236 and 5203 plaintiff argues that a purchaser at a New York execution sale takes free of all encumbrances, including senior tax liens, as long as the notice provisions were complied with.

The court disagrees with plaintiff's interpretation of New York law. On its face § 5236(e) relates only to judgment creditors and does not govern other types of creditors. It states that "a *judgment* creditor duly notified * * * who fails to deliver an execution to the sheriff prior to the sale shall have no further lien on the property." In the practice commentary focusing upon

this subdivision, Professor Siegel explains this provision:

> Mortgagees and other categories of creditor whose liens are senior to that of the judgment being levied do not lose their liens. Not being able to participate in the proceeds by so facile a device as the judgment creditor has—a mere delivery of an execution to the sheriff—these other creditors, as long as their liens are senior, keep the liens, the buyer at the execution sale taking subject to them. Siegel, Practice Commentary to CPLR 5326, C5236:8.

As Professor Siegel explains more fully in his treatise:

> The only liens created by the CPLR are judgment liens, and it is therefore only for situations involving judgment creditors that the CPLR resolves priorities. It does not purport to resolve all of the limitless disputes that can arise among the equally limitless variety of other interests. Nor are such situations rare. A judgment creditor pursuing a debtor will often find that he is not alone. He may recognize a few judgment creditors among his rivals, but be taken aback by the myriad of others with liens emanating from mortgages or pledges, the rendering of services, the sale of goods, the undertaking of a venture, the imposition of taxes, and many more. In a race like that, the CPLR does not dictate the winner; it declares only the lien moment of the judgment creditor, not his competitors. D. Siegel, *New York Practice* § 518 at 706 (1978 Ed).

Nor have the New York courts interpreted the CPLR provisions, or CPLR 5236 in particular, as extending to situations involving other types of liens. As Justice Meyer (now Court of Appeals Judge Meyer) stated in *Dime Savings Bank of Brooklyn v. Sherman*, 64 Misc.2d 457, 314 N.Y.S.2d 86, 88 (Nassau County Sup.Ct. 1970) "movant's reliance on CPLR 5236 appears misplaced, for that section applies to judgment creditors but not to other categories of lien creditors, such as mechanic's lienors, tax lienors, and contract lienors * * *." In *Dime Savings Bank*, the court held that the validity of a federal tax lien was unaffected by CPLR 5236, because the priority of a federal tax lien could be determined only by federal statute, unless federal statute made state law applicable. Turning to 26 U.S.C. § 7425(c)(1) the court found that since its notice provisions had not been complied with, the federal tax lien survived the execution sale. The court did not reach the issue of whether the result would change if notice had been given. However, both *Dime Savings Bank* and the *Practice Commentaries* indicate that the CPLR was not intended to govern the priority status of federal tax liens, and the court rejects plaintiff's arguments to the contrary. *See also Long Beach Housing v. Lew Chew Soon Corp.*, 107 Misc.2d 1037, 436 N.Y.S.2d 539 (Nassau Co.Sup.Ct. 1980).

The cases cited by plaintiff deal only with the position of senior *judgment* creditors who fail to issue an execution to the sheriff and therefore are cut off by execution of a junior judgment lien pursuant to CPLR 5236. Plaintiff's additional argument, that federal tax liens are analogous to state tax warrants and should be treated similarly, is inapposite. Although the case relied upon by plaintiff, *First Federal Savings & Loan Association v. McKee*, 61 Misc.2d 693, 305 N.Y.S.2d 589 (Nassau Co.Sup.Ct. 1969), involved the priority of a state tax warrant, the actual statute discussed there specifically made such a warrant a lien "in the same manner as a judgment duly docketed." *See Dime Savings Bank, supra*, 314 N.Y.S.2d at 88.

■ Plaintiff finally argues that IRS has in the past followed a practice and custom of taking advantage of the CPLR procedure for judgment creditors and obtained payment of federal tax liens by delivering a notice of levy to the sheriff. Having received the benefits of the CPLR procedure, IRS should, according to plaintiff, be required to "pay the price" of being required always to follow that procedure or else forfeit the priority of its senior liens. Even if the court should assume that IRS did follow the "practice and custom" that plaintiff

claims, the court would nevertheless conclude as a matter of law that IRS would not be precluded by its prior conduct from enforcing its lien in any other manner prescribed by law.

After careful consideration of all of plaintiff's arguments, therefore, the court concludes that under New York law a sheriff's execution sale does not extinguish a senior federal tax lien. Accordingly, defendant's motion to dismiss the complaint is granted. The clerk shall enter judgment accordingly.

SO ORDERED.