**UNITED STATES of America, Plaintiff,**

v.

**Martin CARLIN, Barbara Carlin, Park Drive Manor Partnership, Gold Hawk Joint Venture, LRSE Realty Corporation and Free Lunch, Inc., Defendants.**

**No. 92 Civ. 8553 (BDP).**

United States District Court,
S.D. New York.

Nov. 18, 1996.

---

Neil Corwin, Asst. U.S. Attorney, New York City, for plaintiff.

Martin Paul Solomon, New York City, for defendants Martin Carlin, Barbara Carlin, LRSE Realty Corp. and Free Lunch, Inc.

Michael S. Etkin, Gold & Wachtel, New York City, for defendant Gold Hawk Joint Venture.

Adam M. Schuman, Corbin Silverman & Sanseverino, New York City, for defendant New York Federal Sav. Bank.

### MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

The United States of America brings this action (1) to reduce to judgment a federal tax lien filed against defendant Park Drive Manor Partnership ("Park Drive" or "the partnership") and its partners; (2) to set aside the conveyance of Park Drive partner Martin Carlin's interest in real property located at 175 Crary Avenue, Mount Vernon, New York ("Mount Vernon realty") to defendant Barbara Carlin; and (3) for an order declaring that the Internal Revenue Service's ("IRS") lien on the Mount Vernon realty has priority over the interests of defendants Barbara Carlin, LRSE Realty Corporation ("LRSE"), Free Lunch, Inc., and Gold Hawk Joint Venture ("Gold Hawk"). Before the Court is the Government's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth, the Government's motion is granted.

### FACTS

Recognizing that on a motion for summary judgment all factual ambiguities and reasonable inferences are drawn in the nonmoving party's favor, *see Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 444–45 (2d Cir.1980), the following unopposed facts are properly before the Court for purposes of this motion.

In 1985, Martin Carlin, along with two brothers, Vlad Stevens and Steve Stevens, purchased a building complex known as the Park Drive Manor apartments, located at 600 West Harvey Street in Philadelphia, Pennsylvania. A 1985 federal partnership tax return identified Martin Carlin and both Stevens brothers, by name and social security number, as partners of the Park Drive Manor Partnership and lists the partnership's address as 600 West Harvey Street, Philadelphia.

On February 23, 1987, the IRS assessed a tax deficiency against Park Drive in the amount of $22,351.55 for unpaid tax obligations under 26 U.S.C. §§ 6671–6672. On March 30, 1987, the IRS issued another assessment against Park Drive in the amount of $20,088.98. The assessments against Park Drive and its partners arose out of the partnership's unpaid payroll tax obligations for the taxable quarters ending September 30, 1986 and December 31, 1986. On July 14, 1987, the IRS filed its notice of federal tax lien against Park Drive in the Westchester County Clerk's office.

Approximately six weeks later, on August 26, 1987, Martin Carlin conveyed his interest in the Mount Vernon realty to his wife, Barbara Carlin, a transfer for which he received no consideration. On March 28, 1988, Barbara Carlin, in turn, transferred that interest to an entity appropriately named Free

Lunch, of which she was the sole officer. She received no consideration for the transfer. Later that year, Free Lunch conveyed its interest in the property to LRSE, an entity whose sole officer was Martin Carlin's cousin, Michael Jaffe. That conveyance was made for inadequate consideration.[1] Despite notice and due demand, Park Drive and the partners of Park Drive have neglected to pay in full the outstanding assessed liability and accrued statutory interest.

Meanwhile, in May 1987, Gold Hawk obtained a judgment against Martin Carlin in Texas in the amount of $7,928,519.41. Gold Hawk filed a transcript of judgment in the Southern District of New York on July 14, 1987 and recorded its judgment in the Westchester County Clerk's office on July 23, 1987. On or about July 23, 1987, Gold Hawk delivered its judgment against Martin Carlin for execution to the Westchester County Sheriff, who scheduled and issued a notice of nonjudicial sale of the Mount Vernon realty. No notice of the sale was provided to the IRS. On July 18, 1988, Gold Hawk purchased the Mount Vernon realty by a Sheriff's deed which was recorded in the Westchester County Clerk's office on July 29, 1988.

As of December 22, 1995, the taxpayer liability on the assessments issued against Park Drive, including accrued interest and accrued lien costs, totaled $114,798.58. On November 24, 1992, the Government instituted this action against defendants and, on February 2, 1996, moved for summary judgment, arguing that there were no genuine issues of material fact concerning the underlying tax liability of Park Drive or the priority of its interests in the Mount Vernon realty over those of the defendants.

**1.** On September 27, 1995, the Government and counsel for Barbara Carlin appeared before Magistrate Judge Fox for reconsideration of sanctions imposed on Barbara Carlin for her repeated failure to appear for deposition. After determining that Barbara Carlin's noncompliance was due to wilfulness and bad faith rather than any inability to comply, Magistrate Judge Fox made the following findings of fact in accordance with Fed. R.Civ.P. 37(b)(2):

Barbara Carlin can identify no consideration supporting her husband, Martin Carlin's, con-

## DISCUSSION

### A. Standard For Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, "a motion for summary judgment must be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must initially satisfy a burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986); *see also Gallo v. Prudential Residential Servs. Ltd.,* 22 F.3d 1219, 1223 (2d Cir.1994). The burden then shifts to the nonmoving party to come forward with "specific facts, showing that there is a genuine issue of fact for trial," Fed.R.Civ.P. 56(e), by a showing sufficient to establish the existence of every element essential to the party's case, and on which the party will bear the burden of proof at trial. The Court cannot try issues of fact, but can only determine whether there are issues to be tried. *Donahue v. Windsor Locks Bd. of Fire Com'rs,* 834 F.2d 54, 58 (2d Cir.1987). When making that determination, the Court is to inquire whether there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for the party." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986).

In deciding whether a genuine issue of material fact exists, "the court is required to draw all factual inferences in favor of the party against whom summary judgment is sought." *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989). A

veyance of his interest in the reality [sic] located at 175 Creary [sic] Avenue, Mount Vernon, New York (the "Realty") to her on August 26, 1987.... Barbara Carlin's subsequent conveyance of the Realty to defendant, Free Lunch Incorporated ("Free Lunch") ... was, again, for no consideration. And third, Free Lunch's conveyance of it's [sic] interest in property to LRSE Realty Corporation ... was for inadequate consideration.

genuine issue, however, "is not created by a mere allegation in the pleadings ..., nor by surmise or conjecture on the part of the litigants." *United States v. Potamkin Cadillac Corp.,* 689 F.2d 379, 381 (2d Cir.1982) (citations omitted); *Knight v. United States Fire Ins. Co.,* 804 F.2d 9, 11–12 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Indeed, Rule 56(e) of the Federal Rules of Civil Procedure requires that affidavits opposing summary judgment "be made on personal knowledge." Fed.R.Civ.P. 56(e). Thus, unsupported denial, upon information and belief, is insufficient to raise any issue of fact so as to defeat a motion for summary judgment. *Baker v. Latham Sparrowbush Assoc.,* 72 F.3d 246, 255 (2d Cir.1995); *Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff,* 638 F.Supp. 714, 720 (S.D.N.Y.1986).

Under Rule 3(g) of the Civil Rules for the United States District Courts for the Eastern and Southern Districts of New York ("Rule 3(g)"), upon any motion for summary judgment, the moving party must submit a statement of the material facts as to which that party contends there is no genuine issue to be tried. The nonmoving party, in response to the movant's statement of facts not in dispute, must submit a counter-statement of facts in dispute. Those facts not disputed are deemed admitted unless controverted by the statement required to be served by the opposing party. Rule 3(g). *See Russell v. Selsky,* 35 F.3d 55, 58 (2d Cir.1994).

In support of its motion for summary judgment, the Government submitted a Rule 3(g) statement setting forth the material facts as to which the Government contended there was no genuine dispute. ("Rule 3(g) Statement"). The Government's Rule 3(g) statement, *inter alia,* advert to the 1985 federal partnership tax return that clearly identifies Martin Carlin as a partner of the Park Drive Manor Partnership, 600 West Harvey Street in Philadelphia, Rule 3(g) Statement ¶ 3; the tax assessments made against Park Drive in the total amount of $42,440.53, Rule 3(g) Statement ¶ 4; and the sequence of events surrounding the multiple, intrafamily conveyances of the Mount Vernon realty. Rule 3(g) Statement ¶¶ 8–11.

Only defendants Martin Carlin, Barbara Carlin, LRSE, and Free Lunch filed a response to the Government's summary judgment motion. Defendants' 3(g) statement, however, does not controvert any of the material facts supporting the Government's motion for summary judgment.[2] Because the defendants' opposing papers raise no genuine issue and fail to controvert the facts recited in the Government's Rule 3(g) statement, those facts are deemed admitted. Rule 3(g); *San Filippo v. United States Trust Company*

---

**2.** Without addressing the Government's recitation of facts not in dispute, defendants' 3(g) statement simply asserts that "legal title to [the Mount Vernon realty] was taken in the name of Park Drive Associates, Inc.," and that "equitable title to the property was to be held by Park Drive Associates, Ltd., a California limited partnership." We presume that these statements are intended to call into question the existence of the Park Drive Manor Partnership and to raise the inference that Martin Carlin was not, in fact, a partner of a partnership so named. The statements are supported by a 1994 letter of a nonparty attorney who had represented Martin Carlin and the Stevens brothers in connection with their purchase of Park Drive Manor apartments and the purported cover sheet of the closing papers for the purchase of the Park Drive Manor Apartments. This Court finds that neither document raises a genuine issue of material fact that would preclude summary judgment.

The letter merely establishes that an attorney who represented Carlin and the Stevens brothers "as local counsel for limited purposes" was "not aware of the Park Drive Manor Partnership."

The attorney's "awareness" of the partnership has no real probative value as to whether the partnership in fact existed or owned the Park Drive Manor apartment complex.

The cover sheet for the closing papers similarly lacks evidentiary value for the purposes of this motion. The cover sheet states: "Property Title: Legal Title, Park Drive Associates, Inc., a Pennsylvania corporation ... Equitable Title, Park Drive Associates, Ltd., a California limited partnership." It further reflects that the closing date for the sale and purchase of the Park Drive Manor apartment complex was October 30, 1985, over one year before the tax assessments at issue in the underlying action were made. The cover sheet does not dispute the existence of the Park Drive Manor Partnership in 1986, during which the unpaid tax obligations leading to the assessment arose or in any way contradict the facts adduced by the government, most notably the existence of the federal tax return filed by the Park Drive Manor Partnership reporting the income derived from the apartment complex which it owned.

*of New York, Inc.,* 737 F.2d 246, 247 (2d Cir.1984).

## B. Federal Tax Liens on the Park Drive Manor Partnership

▇▇▇ Under the Internal Revenue Code, employers are required to withhold federal income and social security taxes from their employees' wages. Employers must keep the withheld funds "in trust for the United States," 26 U.S.C. § 7501(a), and pay the funds to the IRS on a quarterly basis. *Fiataruolo v. United States,* 8 F.3d 930, 938 (2d Cir.1993). An employer who fails to pay the withheld funds is liable for their payment. The assessments against Park Drive were made pursuant to 26 U.S.C. §§ 6671–6672 because of partnership's willful failure to collect, truthfully account for, and pay over to the United States the income and Federal Insurance Contributions Act taxes withheld from the wages of employees of Park Manor.[3]

▇▇▇ Internal Revenue Service tax assessments, like those issued against Park Drive, are entitled to a presumption of correctness. *United States v. McCombs,* 30 F.3d 310, 318 (2d Cir.1994); *Llorente v. Commissioner of Internal Revenue,* 649 F.2d 152, 156 (2d Cir.1981). Thus, a taxpayer who wishes to challenge the validity of a tax deficiency assessment bears the burden of production and persuasion. *United States v. Janis,* 428 U.S. 433, 440, 96 S.Ct. 3021, 3025, 49 L.Ed.2d 1046 (1976); *McCombs,* 30 F.3d at 318; *DeLorenzo v. United States,* 555 F.2d 27, 29 (2d Cir.1977). Defendants do not contest Park Drive's tax liability or in any way challenge the accuracy of the assessments made against the partnership.

Martin Carlin alone attempts to immunize himself from liability by calling into question his status as a partner of Park Drive. Martin Carlin asserts, on "information and belief," that he never had any association with, or knowledge of, an entity called Park Drive Manor Partnership. In opposing a summary

judgment motion, however, an adverse party "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Randell v. United States,* 64 F.3d 101, 108 (2d Cir.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 65, 136 L.Ed.2d 26 (1996). Facts alleged in Carlin's affidavit in opposition to the Government's summary judgment motion did not purport to be made on personal knowledge as required under Rule 56(e) of the Federal Rules of Civil Procedure. As unsupported assertions they were inadequate to defeat a motion for summary judgment. *Randell,* 64 F.3d at 109; *Potamkin Cadillac Corp.,* 689 F.2d at 381.

Not only are Martin Carlin's assertions unsubstantiated, but the undisputed facts before this court clearly establishes Carlin's status as a partner of Park Drive. Martin Carlin admits to having entered into a partnership with Vlad Stevens and Steve Stevens for the purpose of purchasing "a building complex known as Park Drive Manor Apartments in Philadelphia, Pennsylvania." Carlin Dep. at 15–16. Vlad Stevens identified Martin Carlin as a co-partner of the Park Drive Manor Partnership. Decl. of Vlad Stevens ¶ 6. The federal partnership tax returns, IRS Forms 941 and 1065, list Martin Carlin as a partner of the Park Drive Manor Partnership. Those returns contain a partner identification number for each partner, including Martin Carlin.

In light of the presumption of correctness afforded to government tax assessments and the failure of defendants to introduce any evidence rebutting Park Drive's underlying tax liability, the assessments rendered against the partnership are taken as accurate. Furthermore, since Martin Carlin has failed to establish that a genuine issue exists as to his status as partner of Park Drive, this Court finds that he is jointly and severally

---

**3.** 26 U.S.C. § 6672 provides in pertinent part:
Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully failed to collect such tax, or truthfully account for and pay over such tax,

or willfully attempts in any manner to evade or defeat such tax or the payment thereof, shall ... be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid for.

liable, under N.Y. Partnership Law § 26, for the partnership's tax assessments.

## C. Conveyances of the Mount Vernon Realty

█ The Government further moves this Court to set aside the transfer of Martin Carlin's interest in the Mount Vernon realty to his wife Barbara Carlin on the grounds that the conveyance was effected to place the property beyond the reach of Martin Carlin's creditors, including the IRS. The Government argues that the conveyance was constructively fraudulent under New York's Debtor and Creditor Law § 273.

Section 273 of New York's Debtor and Creditor Law states:

> [e]very conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation incurred without a fair consideration.

N.Y.Debt. & Cred.Law § 273. Thus, to establish a fraudulent conveyance under this provision, the Government must prove that (1) Martin Carlin conveyed the property to his wife, (2) Martin Carlin was or would thereby have become insolvent at the time he made the conveyance, and (3) he made the conveyance without fair consideration.

█ The uncontested facts in this case support the Government's claim. It is undisputed that Martin Carlin conveyed his interest in the Mount Vernon realty to his wife voluntarily and without consideration. Furthermore, Martin Carlin conveyed the realty at a time that he was indebted to the United States for federal taxes, and, according to his own testimony, in over $80 million of debt. Carlin Dep. at 35. When a transfer is made without consideration, the initial burden to demonstrate solvency is on the defendant. *ACLI Government Securities, Inc. v.*

*Rhoades,* 653 F.Supp. 1388, 1393 (S.D.N.Y. 1987), *aff'd,* 842 F.2d 1287 (2d Cir.1988).

Here, defendants have adduced no evidence that Martin Carlin was solvent at the time of the conveyance, nor have they otherwise challenged the Government's showing that Martin Carlin was, in fact, insolvent at the time of the conveyance. Accordingly, this Court finds that the August 26, 1987 conveyance was fraudulent under section 273 of the N.Y. Debtor & Creditor Law.[4]

█ This Court further finds that the subsequent conveyances of the Mount Vernon realty, first from Barbara Carlin to Free Lunch and then from Free Lunch to LRSE Realty, were fraudulent under section 276 of New York's Debtor & Creditor Law. Section 276 provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." N.Y.Debt. & Cred.Law § 276.

█ Where actual intent to defraud creditors is proven, the conveyance will be set aside regardless of the adequacy of consideration. *McCombs,* 30 F.3d at 328. Under section 276, intent need not be shown by direct evidence and is normally inferred from the circumstances surrounding the transfer. *Id.; In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983,* 731 F.2d 1032, 1041 (2d Cir.1984); *ACLI Government Securities,* 653 F.Supp. at 1394. Factors to consider include close relationships among the parties, secrecy and haste in making transfer, inadequacy of consideration, and the transferor's knowledge of creditor's claims and any inability to pay them. *McCombs,* 30 F.3d at 328. Only an actual intent to hinder and delay need be established, not an actual intent to defraud, and lack of fair consideration gives rise to a rebuttable presumption of fraudulent intent. *Atlanta Shipping Corp., Inc. v. Chemical Bank,* 631 F.Supp.

---

4. The Government further contends that the conveyance was fraudulent on the grounds that it was made (1) for inadequate consideration at a time when the transferor believed that he would incur debts beyond his ability to pay, N.Y.Debt. & Cred.Law § 275; and (2) with the actual intent to defraud the IRS. N.Y.Debt. & Cred.Law § 276. Having determined that the conveyance to Barbara Carlin was fraudulent under section 273, this Court need not consider whether the conveyance was fraudulent under those alternative theories.

335, 346–47 (S.D.N.Y.1986), *aff'd*, 818 F.2d 240 (2d Cir.1987).

The conveyances to Free Lunch and LRSE had all of the indicia of fraudulent intent. On or about March 28, 1988, Barbara Carlin transferred her interest in the Mount Vernon realty to Free Lunch, an entity of which she was the sole officer, for no consideration. Free Lunch's later conveyance of its interest in the Mount Vernon realty to LRSE, an entity whose sole officer was Martin Carlin's cousin, Michael Jaffe, was also for inadequate consideration. Thus, plaintiff has asserted sufficient facts to establish a presumption of fraudulent intent. Those facts remain unchallenged by defendants.

Where a conveyance is fraudulent as to a creditor, that creditor, when his claim has matured, may have the conveyance set aside to the extent necessary to satisfy his claim: N.Y.Debt. & Cred.Law § 278(1)(a). Having determined that the conveyances of the Mount Vernon realty to (1) Barbara Carlin, (2) Free Lunch, and (3) LRSE were independently fraudulent, this Court orders that those conveyances be set aside.

### D. Priority of the IRS's Lien on the Mount Vernon Realty

The remaining issue is the Government's request for an order declaring that the IRS's lien on the realty has priority over the interests of defendant Gold Hawk.

Section 6321 of Title 26 authorizes the Government to impose a tax lien upon property of defaulting taxpayers. 26 U.S.C. § 6321; *see McCombs*, 30 F.3d at 321; *United States v. 110–118 Riverside Tenants Corp.*, 886 F.2d 514, 518 (2d Cir.1989), *cert. denied*, 495 U.S. 956, 110 S.Ct. 2560, 109 L.Ed.2d 743 (1990). Courts have long held that priority of federal tax liens is to be determined by the rule of "first in time, first in right." *United States v. New Britain*, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954); *110–118 Riverside Tenants Corp.*, 886 F.2d at 518. A federal tax lien is deemed to arise at the time that the assessment is made, even where the lien has not been recorded, and continues until the amount of liability set forth in the assessment is satisfied. *McCombs*, 30 F.3d at 321; *Don King Productions, Inc. v. Thomas*, 945 F.2d 529, 534 (2d Cir.1991).

Once a lien is imposed, the sale of any property on which the United States has such a lien is subject to notice requirements set forth in 26 U.S.C. § 7425(c)(1). Notice of sale must be given in writing, by registered or certified mail or by personal service, not less than 25 days prior to such sale, to the Secretary of Treasury. 26 U.S.C. § 7425(c)(1). Moreover, the judicial sale of property in which the United States holds a tax lien is made subject to, and without disturbing, the United States' tax liens. 26 U.S.C. § 7425(b); *see Berlin v. United States*, 535 F.Supp. 298 (E.D.N.Y.1982) (holding that sheriff's execution sale, pursuant to a junior judgment lien, did not extinguish the senior tax lien of the IRS even where the plaintiff complied with all federal and state notice requirements).

The uncontested facts before the Court clearly establish the priority of the IRS's tax liens over the interests of defendant Gold Hawk. The IRS made its assessments on February 27, 1987 and March 30, 1987 and, on July 14, 1987, filed a notice of federal tax lien against the partnership in the Westchester County Clerk's office.

Meanwhile, defendant Gold Hawk did not record its judgment in the Westchester County Clerk's office until July 23, 1987, nine days after the IRS filed its notice of lien and almost four months after the IRS made its final assessment against Park Drive. Gold Hawk's judgment lien was, therefore, second in time to the IRS's senior federal tax lien.

Thus, when Gold Hawk subsequently arranged for the Westchester County Sheriff to schedule a nonjudicial sale of the Mount Vernon realty, Gold Hawk was obligated, pursuant to 26 U.S.C. § 7425, to provide the IRS, as senior lien holder, with notice of the sale. The sale, of which the IRS received no notice, resulted in the property being sold to Gold Hawk by Sheriff's deed. Accordingly, that sale was made subject to, and without disturbing, the federal tax lien. *See* 26 U.S.C. § 7425(b).

## CONCLUSION

For the reasons set forth above, the Government's motion for summary judgment is granted pursuant to Fed.R.Civ.P. 56. The government shall submit a proposed judgment consistent with this opinion by December 2, 1996 on five days notice to defendants.

SO ORDERED.